UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

MAURICE WHITE,

              Petitioner,

       - against -

CALVIN WEST,
Superintendent-Elmira Correctional Facility,

              Respondent.
-----------------------------------------------------------------------X
**MAUSKOPF, United States District Judge.**

**MEMORANDUM & ORDER**
04-CV-02886 (RRM)

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ **DEC 0 6 2010** ★

BROOKLYN OFFICE

      Pending before this Court is Maurice White's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Pro se* petitioner White ("Petitioner") seeks relief from his conviction in New York State Supreme Court, Kings County, for second degree murder based on depraved indifference. He was sentenced to twenty-five years to life imprisonment.

      White's petition asserts eight grounds in support of his application. First, he alleges that the trial court erred when it declined to suppress evidence as the product of an unlawful arrest in violation of the Fourth Amendment. Second, he contends that the trial court failed to fully address all relevant facts on his motion to suppress evidence, in violation of the due process clause of the Fifth Amendment. Third, he argues that he was not afforded a fair trial as required by the Sixth Amendment. Fourth, he alleges that the trial court erred by failing to deliver proper jury instructions suspending deliberations for the weekend in violation of his Sixth Amendment right to a fair trial and the due process clause of the Fifth Amendment. Fifth, he asserts that the court erred in delivering jury instructions while defendant was absent from the courtroom in violation of his Sixth Amendment right to a fair trial. Sixth, he argues that the government failed

to disclose exculpatory evidence, depriving him of a fair trial in violation of the Sixth Amendment. Seventh, he contends that the prosecution elicited false testimony from a witness, thereby violating the Sixth Amendment. Eighth, he alleges that the discovery of new evidence sheds light on his allegation that a prosecution witness testified falsely in violation of his Sixth Amendment right to a fair trial. (*See* Habeas Corpus Pet. ("Habeas Pet."); Am. Habeas Corpus Pet. ("Am. Habeas Pet."))

For the reasons set forth below, the Petition is DENIED.

## I. BACKGROUND

### A. INDICTMENT

A Kings County grand jury indicted Petitioner under indictment number 10501/97 for two counts of murder in the second degree pursuant to New York Penal Code ("N.Y.P.L.") §§ 125.25(1) and (2), both depraved indifference murder and intentional murder. He was also indicted for criminal possession of a weapon in the second degree pursuant to N.Y.P.L. § 265.03(2). Petitioner pleaded not guilty to all charges and proceeded to a jury trial before the Honorable Anne G. Feldman.

### B. TRIAL

Petitioner's conviction arose from the September 13, 1997 murder of John Hudson in the vicinity of Jefferson and Evergreen Avenues in Brooklyn, New York. According to an autopsy, the cause of Hudson's death was a gunshot wound to the head. (Trial Tr. 45, Sept. 9, 1999.)[1] The conviction was based largely on the testimony of four eyewitnesses to the crime: Brandon

---

[1]   State Court trial transcripts, as well as briefs to the State Court, were submitted largely in hard copy as voluminous exhibits. These files are a matter of public record and may be found in the Office of the Clerk of Court.

Youngblood, Leonard Gibbons, Jamar Curtis, and Jason Miley. The trial court also held a suppression hearing to examine whether Petitioner's warrantless arrest merited suppression of Petitioner's statements to the police, witness identifications, and witness statements.

## 1. The Murder

### a. *Brandon Youngblood*

Until he voluntarily approached the police to give a statement, the police considered Brandon Youngblood to be a possible suspect. (Suppression Hr'g Tr. 76, Apr. 7, 1999; Trial Tr. 173.) However, Youngblood was quickly dismissed as a suspect on the basis of his cooperation with the police; prior to trial, for example, he identified Petitioner from a photographic array, referring to him by the name "Happy." (Suppression Hr'g Tr. 27, 31.) He also identified Petitioner in a line-up constituted by the police. (Trial Tr. 174.)

He testified that, on the night of September 13, 1997, he was socializing with Leonard Gibbons, Carlos Perez,[2] and Jamar Curtis on the corner of Jefferson and Evergreen Avenues in Brooklyn, New York. (*Id.* at 158.) At approximately 10:50 p.m., he saw "Happy," identified as Petitioner, and "Tragedy," later identified as prosecution witness Jason Miley, approach the area on bikes. (*Id.* at 158, 202.) As Petitioner approached a car that had pulled up to the corner, Petitioner "dropped a gun in the middle of the street," picked it up and tucked it into his waist, and then approached the group standing on the corner. (*Id.* at 159-62, 166.) When Youngblood walked away from the group, he passed the victim as he crossed the street. (*Id.* at 165-67.) When the victim passed behind him, Youngblood heard gunshots and turned around; he observed Petitioner putting a gun in his waistband and picking up his bike. (*Id.* at 167-70.) Petitioner told

---

[2]     Mr. Perez was subpoenaed as a witness, but failed to appear before the Court. (*Id.* at 327.)

"Tragedy" to take the victim's jewelry, but "Tragedy" instead mounted his bike and rode in the opposite direction. (*Id.* at 170.)

Youngblood and another witness, Carlos Perez, approached the victim, called an ambulance and the police, and left the scene. (*Id.* at 170-72.) On cross-examination, Youngblood admitted he had been smoking marijuana on the day in question. (*Id.* at 202.)

   b. *Leonard Gibbons*

Leonard Gibbons also testified as an eyewitness. Prior to trial, he voluntarily spoke with the police at Youngblood's behest. (Suppression Hr'g Tr. 78.) He also identified Petitioner from a photographic array, calling him "Happy." (*Id.* at 27, 31.)

At trial, Gibbons testimony largely corroborated Youngblood's account. (Trial Tr. 227, 373-75.) Gibbons, Youngblood, Perez, and others were socializing on the corner of Jefferson and Evergreen Avenues on the night of September 13, 1997, when "Happy" and "Tragedy" arrived at the scene on bikes "to rob a guy." (*Id.* at 227, 239.) Gibbons saw a gun – a .38 revolver – drop to the ground, and watched Petitioner pick it up. (*Id.* at 228.) Gibbons walked away from the scene briefly; when he returned, he heard gunshots. (*Id.* at 231.) "Happy" then got on his bike and rode away. (*Id.*) On cross-examination, Gibbons conceded to defense counsel that he was a habitual user of marijuana, and that he had been convicted for selling drugs. (*Id.* at 243.)

   c. *Jamar Curtis*

Jamar Curtis was the sole eyewitness[3] to actually see Petitioner shoot the victim. He testified pursuant to an agreement negotiated by his attorney and the District Attorney's Office, whereby his truthful testimony was exchanged for a plea to a lesser charge. (*Id.* at 281, 284.) At the time of testimony, Jamar Curtis was incarcerated for possession of a weapon, a fact elicited by the State and by defense counsel. (*Id.* at 280, 298.) On cross-examination, he also admitted that he had been previously arrested for the sale of crack-cocaine. (*Id.* at 311.)

On September 13, 1997, at approximately 10 p.m., Curtis was socializing on the corner of Evergreen and Jefferson Avenues with Youngblood, Gibbons, and Perez. (*Id.* at 288.) "Happy" arrived at the scene; he subsequently approached the victim and demanded his jewelry. (*Id.* at 293.) The victim resisted. (*Id.*) "Happy" then shot the victim in the head, and instructed Jason Miley to take his jewelry. (*Id.* at 291, 295.) "Happy" and Jason Miley then fled the scene in opposite directions. (*Id.* at 295.)

### d.  *Jason Miley*

Jason Miley, known also as "Tragedy," testified that he and "Happy" had been playing dice at a party on the evening of September 13, 1997. (*Id.* at 373.) Miley left the party and proceeded to "the weed spot" on Jefferson Avenue, where "Happy" approached Miley and told him that he had "better get his money back" – that is, the money "Happy" had lost at dice. (*Id.*) He further told Miley that if he didn't help him, he would shoot him. (*Id.*) Miley proceeded to the corner of Evergreen and Jefferson Avenues, where he conversed with several women in a car for approximately fifteen minutes, until "Happy approached somebody and tried to rob him. . . I see [sic] him try to grab a person, and the person ran, and he shot him." (*Id.* at 374.) Miley

---

[3] That is, apart from Carlos Perez, who did not comply with a subpoena to appear and testify. (*Id.* at 327.)

heard three shots, and "Happy" instructed him to seize the victim's jewelry. (*Id.* at 374-75.) They fled in opposite directions. (*Id.* at 295.)

During the course of his testimony, Miley testified that he had never known "Happy's" real name, and stated that the alias of the defendant in the courtroom's was "Tracks." (*Id.* at 380.) This testimony was, the State pointed out, in direct opposition to the statements he had made to the police; he had identified Petitioner from a photographic array and had told the police the shooter's alias was "Happy." (*Id.* at 381.) At sidebar, Miley's prison escort recounted that Miley had told him he feared a gentleman previously in the audience, who had since left the proceedings, and that he feared for his safety upon returning to prison. (*Id.* at 389.) After being promised that Miley and Petitioner would be held in separate correctional facilities, Miley contradicted his earlier testimony and identified the defendant in the courtroom as "Happy." (*Id.* at 395-96.) On cross-examination, defense counsel noted that he changed his testimony in this regard. (*Id.* at 396.)

On both direct and cross-examination, Miley admitted to an extensive and lengthy criminal history. At the time of his testimony, Miley was incarcerated in state prison as the result of a robbery conviction. (*Id.* at 370.) He also admitted, on cross-examination, to past charges of attempted murder, assault, possession of various firearms, and robbery. (*Id.* at 399.) Further, defense counsel on cross-examination elicited testimony from Miley that he had pleaded guilty to the possession of a gun and to reckless endangerment for opening fire on a crowd with an automatic weapon, resulting in the injury of two people. (*Id.* at 398-99.) He was also involved in an attempted robbery, in which the victim was shot by an accomplice. (*Id.* at 401.) Last, he pleaded guilty to involvement in another armed robbery. (*Id.* at 402.)

When asked by defense counsel whether he was a member of the Bloods, he first answered that he was not. (*Id.* at 404.) However, he subsequently testified that he had told the police he was a member of the Bloods, admitted to having "the marks on [his] arm" denoting gang membership, and finally confessed to past, though not contemporaneous, membership in the Bloods gang. (*Id.* at 404-05.) He further admitted to lying to the police when they first questioned him about Hudson's murder. (*Id.* at 403.)

### 2. The Arrest: Police Testimony

Detective Chioffe, the lead detective on the Hudson murder, testified both at the suppression hearing and at trial about the facts leading to Petitioner's warrantless arrest. After Youngblood and Gibbons voluntarily approached the police to give a statement about the events of September 13, 1997, Chioffe attempted to locate Petitioner to no avail. (Suppression Hr'g Tr. at 32-34.) From Petitioner's parole officer, Chioffe discovered Petitioner's location and set out for 1349 Jefferson Avenue, accompanied by ten to twelve detectives and several uniformed officers. (*Id.* at 34.) He did not apply for an arrest warrant or consult with the District Attorney's Office. (*Id.* at 59-60.)

The police rang the doorbell at 1349 Jefferson Avenue. (*Id.* at 34.) Elijah Johnson, Petitioner's grandfather, answered the door, and in response to Detective Chioffe's query as to whether Petitioner was home, Johnson said, "let me see if he is upstairs." (*Id.* at 156.) Four or five detectives followed Johnson up three flights of stairs, until they encountered Petitioner's girlfriend in the hallway of the third floor; she informed Johnson that Petitioner was not home. (*Id.* at 156, 34.)

After this exchange, one of the detectives observed a face looking through the skylight above the hallway. (*Id.* at 34-35.) The police drew their weapons, and called for the Emergency Service Unit. (*Id.* at 36, 92.) The face disappeared, the officers heard footsteps across the ceiling, and Petitioner's foot suddenly broke through the ceiling of a room off the hallway. (*Id.* at 36-37; 99.) Several police officers entered the room, but Petitioner had already retreated to a different part of a crawlspace between the ceiling and roof, which was connected throughout several adjoining homes and permitted access to all buildings connected thereto. (*Id.* at 7, 94.) Meanwhile, members of the Emergency Service Unit and the 83rd Precinct waited on the roof of the adjoining building, 1347 Jefferson Avenue, while helicopters circled the area. (*Id.* at 6, 92-93.) Officer Andrew Fesler testified that he saw appellant in between the rafters of the crawlspace and arrested, handcuffed, and removed Petitioner from the building at approximately 6:00 p.m. (*Id.* at 7, 16.)

Petitioner was immediately taken to the 83rd precinct, where he was placed in an interview room and interrogated after being advised of his *Miranda* rights. (*Id.* at 37-39, 42.) Defendant then made two statements to the police. (*Id.* at 37-45, 132-33, 137.) In each encounter with the police, Petitioner insisted that he was innocent of the murder, claiming that on the night of the shooting, he rode his bicycle to a block party and played dice, picked up his girlfriend at 8:00 p.m., and that the couple than went to his house for the rest of the night. (*Id.* at 44-46.) He alleged that the "guys on the corner" – presumably Youngblood and Gibbons – were jealous of him and "wanted to put him away." (*Id.* at 44.) Though he had committed robberies, he protested that he was not a murderer and had no need to use a gun because of his large physique. (*Id.* at 44-45, 117.) In any event, he said, he would not "do anything" in his neighborhood because everyone knew him. (*Id.* at 44.) Petitioner further alleged that he knew

who was responsible for the murder, but kept that knowledge to himself at first; he said that he was "not a rat." (*Id.*) He then postulated that the murder was likely in retaliation for a recent drug-related robbery. (*Id.*) Later, he alleged that the shooters were two black men between eighteen and twenty years old named "Dave and Chris." (*Id.* at 47-48.) Petitioner noted, several times, his awareness of the consequences of committing a third felony in New York and that, due to his fear of returning to prison, he could not place himself at the scene of the crime. (*Id.* at 46, 135, 117.)

At approximately 11:50 p.m., in a line-up composed by the police, Youngblood identified Petitioner as the individual holding a gun after the victim was shot; Gibbons identified defendant as the individual who had dropped a gun after shots were fired. (*Id.* at 54-56.) Both referred to Petitioner as "Happy." (*Id.*)

Carlos Perez, one of the witnesses at the scene, identified Petitioner as "Happy" from a photographic array shown to him by the police on September 26, stating that "Happy" had been in possession of a gun and had shot the victim. (*Id.* at 140-42.) On October 28, Jason Miley, an Petitioner's acquaintance and former robbery accomplice who went by the name "Tragic" or "Tragedy," identified the Petitioner as "Happy," and as the shooter, in a photo array. (*Id.* at 113, 119.)

At a suppression hearing held by the court, Petitioner argued that the warrantless arrest in his home was unconstitutional because there existed neither consent nor exigency to justify it. (*See* Def.'s Mem. of Law at 9-10.) The trial court denied the suppression motion, however, finding that that Johnson had implicitly consented to the warrantless entry by allowing the officers to follow him inside the house, and that exigent circumstances existed by virtue of Petitioner's attempted escape.

## C. CONVICTION AND SENTENCING

Petitioner was convicted in the New York Supreme Court, Kings County on September 24, 1999, when a jury found him guilty of second degree depraved indifference murder pursuant to N.Y.P.L. § 125.25(2).[4]  (*Id.* at 561.)  Petitioner was acquitted of second degree intentional murder.  (*Id.* at 561.)  On December 23, 2009, Petitioner was sentenced to a term of twenty-five years to life imprisonment.  (Sentencing Tr. at 21, Dec. 23, 1999.)


## D. DIRECT APPEAL

Petitioner appealed the judgment of conviction to the Supreme Court of the State of New York, Appellate Division, Second Department ("Appellate Division") in December of 2001.[5]  He alleged that:  (1) the suppression court erred in finding consent and exigency justifying warrantless entry by the police and thus erred in refusing to suppress Petitioner's arrest, statements to the police, and the witness identifications; (2) inconsistency in Miley's testimony rendered evidence of defendant's guilt legally insufficient; (3) Curtis's testimony was incredible as a matter of law; (4) the trial court erred in failing to inform attorneys that a juror needed to leave deliberations temporarily to pay her mortgage; and (5) it was error for the trial judge to fail to instruct jurors before releasing them for the weekend or to do so in Petitioner's absence.  (*See* Def.-Appellant Br. 1; Def. *Pro Se* Supplemental Br. 1.)

On January 13, 2003, the Appellate Division affirmed Petitioner's conviction.  *People v. White*, 752 N.Y.S.2d 905 (App. Div. 2003).  As to the alleged Fourth Amendment violations, the

---

[4] Though Petitioner was charged with criminal possession of a weapon, *see supra*, and the jury was charged as to possession of a firearm, the record does not reflect that the jury returned a verdict as to that count of the indictment.  In any event, Petitioner sentenced as to that charge according to the record.  (*See* Sentencing Tr.)
[5] Though represented by counsel on appeal, Petitioner also submitted a *pro se* supplemental brief.

Court agreed that the entry by the police into White's home, though warrantless, was justified by Johnson's consent and by exigency: "We agree with the hearing court that the police officers' warrantless entry into the defendant's home was made with the consent of the defendant's grandfather, who owned the premises." *See id.* at 905. After admitting several police officers into his house, Petitioner's grandfather allowed them to follow him to the third floor, effectively consenting to their continued presence. *See id.* Indeed, this consent was all the more authoritative, the court reasoned, because Johnson was the actual owner of the property. *See id.* Once lawfully inside the house, the Court reasoned, the defendant's attempt to flee presented an exigent circumstance and thus further justification for the warrantless arrest. *See id.*

The evidence, the Court found, was legally sufficient to prove depraved indifference murder and, indeed, the weight of the evidence supported the jury's verdict. *See id.* The court then rejected without discussion all of defendant's supplemental contentions as lacking merit. *See id.*

### E. LEAVE TO APPEAL

Subsequent to the Appellate Division's affirmation, Petitioner sought leave to appeal. On March 31, 2003, the New York Court of Appeals denied leave to appeal. *People v. White*, 100 N.E.2d 492 (N.Y. 2003).

### F. PETITIONER'S MOTION TO VACATE THE JUDGMENT OF CONVICTION

1. **Motion to Vacate**

On July 1, 2003, Petitioner filed a *pro se* motion to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10, in the Supreme Court

of New York, Kings County. (Am. Habeas Pet., Ex. A ("Pet'r's 440 Mot.")) Petitioner argued that: (1) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose Miley's prison records; (2) the State elicited false testimony from Curtis; (3) the court improperly instructed the jury, and did so in the defendant's absence; and (4) newly discovered evidence uncovered subsequent to trial supported the claim that Curtis had committed perjury. (*Id.*)

The court denied Petitioner's motion in its entirety on December 23, 2003. (Am. Habeas Pet., Ex. D ("Judge Feldman 440 Decision.")) The court found that Petitioner's *Brady* claim was meritless. The prosecution, the Court held, had complied with discovery obligations under New York law, N.Y.C.P.L. § 240.45(1)(b)(c). (*Id.*) Further, absent a specific demand for disclosure, the court reasoned, a constitutional error occurs only if there exists a "reasonable probability" that disclosure of the evidence would alter the result of the proceeding. *See id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) (internal quotation marks omitted)). Because the jury was fully aware of the witness's criminal history, and since there was strong evidence of Petitioner's guilt, there was no "reasonable probability that such speculative evidence would in any way have altered the verdict in the case." *Id.* (quoting *United States v. Bagley*, 473 U.S. at 682 (internal quotation marks omitted)).

The court summarily denied Petitioner's claim that the State elicited false testimony. The court concluded that this claim was procedurally barred, as Petitioner unjustifiably failed to raise the issue on direct appeal despite the existence of sufficient facts on the record to do so. *See* N.Y.C.P.L. § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . Although sufficient facts appear on the record. . . such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the

prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. . . .").

Petitioner's claim that the trial court failed to properly instruct the jury before a weekend adjournment was also summarily denied. *Id.* The Court noted that the issue was raised in defendant's supplemental *pro se* brief on appeal.[6] *Id.*

Finally, the Petitioner's claim of newly discovered evidence was denied without a hearing. (*Id.*) The court found that the new evidence – a letter allegedly implying that a witness committed perjury – was unverified hearsay and thus did not provide a sufficient ground to vacate his conviction pursuant to N.Y.C.P.L. § 440.30(4)(b). (*Id.*)

Thus, the court denied the Petitioner's motion to vacate the judgment of conviction in its entirety.

## 2. Appeal of Denial of Motion to Vacate

Petitioner attempted to appeal the denial of his motion to vacate. However, due to procedural error on Petitioner's part, his appeal did not comply with the formal requirements of state law as mandated by 22 N.Y. Ct. Rules ("N.Y.C.R.") § 670.12(b). A motion for post-conviction relief is properly filed when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2001).

To appeal a decision denying a motion to vacate a judgment, a defendant is required to file a motion for permission to appeal to the Appellate Division within thirty days of service of the trial court's order. 22 N.Y.C.R. § 670.12(b). The application must also contain, *inter alia*, a

---

[6] Presumably the court meant that it was raised for the first time in his brief on appeal and was thus procedurally barred, though the court was not explicit about this point.

statement of the issues to be reviewed, a copy of the order from which the applicant seeks to appeal, and a copy of the original motion which was denied. *Id.*

Petitioner failed to meet those requirements and his application was rejected on procedural grounds, with leave to amend the procedural deficiency and resubmit. (*See* Am. Habeas Pet. at 3.) Petitioner later explained in a letter to the state court that he failed to file properly because the form he was originally given, which explained how to appeal the denial of his motion to vacate, did not direct him to append the original motion as a requirement of proper filing. (*See* Def.'s Letter to Appellate Division Court Clerk, January 30, 2004.)[7] Petitioner then wrote to the court asking for a copy of the motion to vacate, explaining that his original motion was either lost or stolen during a prison transfer, but received no response. (*See* Am. Habeas Pet. at 3.) His subsequent application, which was rejected as untimely, included the receipt from his letter to the court requesting to purchase the order, as well as an explanation of why the order was missing from the application. (*Id.* at 3-4.)

## G. POST-CONVICTION PROCEEDINGS

On July 7, 2004, Petitioner filed this Petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[8]

Petitioner asserts the following grounds in his petition and his amended petition: (1) the trial court failed to suppress evidence as the product of an unlawful arrest in violation of the Fourth Amendment; (2) the trial court failed to fully address all relevant facts on his motion to suppress evidence, in violation of the due process clause of the Fifth Amendment; (3) Petitioner was not afforded a fair trial as required by the Sixth Amendment; (4) the trial court's jury

---

[7]     It is quite clear that 22 N.Y.C.R. § 670.12(b) does so indicate.
[8]     Petitioner submitted both an original habeas corpus petition and an amended habeas corpus petition, which the Court considers as one.

instructions suspending deliberations for the weekend violated his Sixth Amendment right to a fair trial and the due process clause of the Fifth Amendment; (5) the court erred in delivering jury instructions while defendant was absent from the courtroom in violation of his Sixth Amendment right to a fair trial; (6) the government failed to disclose a witness's exculpatory prison records in violation of the Sixth Amendment; (7) the State elicited false testimony from a witness, thereby violating the Sixth Amendment; (8) the discovery of new evidence sheds light on his allegation that a prosecution witness testified falsely in violation of his Sixth Amendment right to a fair trial. (Habeas Pet. at 1-4; Am. Habeas Pet. at 1-2.)

## II. APPLICABLE LAW

### A. STANDARD OF REVIEW UNDER 28 U.S.C. § 2254(D)(1)

In deciding whether to grant a federal habeas corpus petition, the Court must apply the standard of review set forth by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA requires a rigorous standard of review with regard to petitions filed by state prisoners. *See Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). Under the AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Though the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are analyzed independently, both limit "the source of clearly established law to [the

Supreme] Court's jurisprudence." *Wilson v. Corcoran*, No. 10-91, 2010 WL 4394137, at *2 (U.S. Nov. 8, 2010); *Williams*, 529 U.S. at 404–05, 412; *see also Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quoting *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002)).

A state court "adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citation and internal quotation marks omitted). "When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Id.* This is because "federal courts recognize a conclusive presumption that, when presented with an express federal claim, a state court's decision rests principally upon an application of federal law even absent any express reference to federal authority." *Reznikov v. David*, No. 05-CV-1006, 2009 WL 424742, at *3 (E.D.N.Y. 2009) (citing *Sellan*, 261 F.3d at 314).

The Supreme Court has noted that a state court decision will be "contrary to" established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if a state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405-06.

Further, the Supreme Court has held that, with respect to the "unreasonable application" clause, a federal court may grant a petitioner's writ of habeas corpus "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 413. The state court's application, however, must be "objectively unreasonable," *id.* at 409-10, a "higher threshold" than

"incorrect." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). Moreover, if a federal court "finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard*, 406 F.3d at 122 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993)).

The AEDPA requires that federal courts treat state court adjudication with great deference. *Brown v. Artuz*, 283 F.3d 492, 500 (2d Cir. 2002). This deference is warranted "even if the state court decision does not explicitly refer to either the federal claim or to relevant federal case law." *Stellan*, 261 F.3d at 312. Moreover, this standard extends to factual determinations made by the state court: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner can only rebut this presumption of correctness with clear and convincing evidence. *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003).

The "unreasonable determination" inquiry under 2254(d)(2) has also been elucidated by the Supreme Court: "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). A state court's application of federal law must be "objectively unreasonable." *Id.* at 409. This is even more stringent a requirement than clear error, which can be distinguished from unreasonableness for the purposes of this inquiry. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Indeed, the Second Circuit has required "some increment of incorrectness beyond error." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). [9]

---

[9] According to the Second Circuit, however, though "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000) (citations and internal quotation marks omitted).

## B. THE EXHAUSTION REQUIREMENT

Section 2254 codifies an exhaustion requirement, providing that a federal habeas court may not grant "[a]n application for a writ of habeas corpus . . . unless it appears that — (A) the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); *see also Rose v. Lundy*, 455 U.S. 509, 515–16, 518 (1982) ("The exhaustion doctrine existed long before its codification [in 28 U.S.C. § 2254] by Congress in 1948" and is "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."). In the Second Circuit, courts must follow a two-step exhaustion analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

*Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981); *see also* 28 U.S.C. § 2254(c).

In order to "fairly present" a constitutional claim, a federal habeas petitioner must alert the state appellate court that a federal constitutional claim is at issue. *See, e.g.*, *Grady v. Lefevre*, 846 F.2d 862, 864 (2d Cir. 1988); *Rodriguez v. Sabourin*, 274 F. Supp. 428, 433 (S.D.N.Y. 2003). The Second Circuit, sitting *en banc*, has further stated:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc), *cert. denied*, 464 U.S. 1048 (1984).

## C. ADEQUATE AND INDEPENDENT STATE GROUND DOCTRINE

The Supreme Court has noted that the "adequate and independent state ground doctrine applies on federal habeas" such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations and internal quotation marks omitted); *see also Lee v. Kemna*, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of firmly established and regularly followed state rules . . . will be adequate to foreclose review of a federal claim." (citation and internal quotation omitted)); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006) ("Federal courts considering habeas corpus petitions are generally barred from reviewing the decisions of state courts insofar as those decisions are predicated on adequate and independent state grounds.") Thus, a federal court may not entertain a procedurally barred claim "absent a showing of cause and prejudice to excuse the default," or unless the petitioner "can demonstrate actual innocence of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 387-88 (2004) (citing *Murray*, 477 U.S. at 496).

In order to show "cause" for a default, a habeas petitioner must demonstrate that "some objective factor external to the defense" prevented the petitioner from presenting the claim. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Where a petitioner has failed to demonstrate

cause, the court need not address the issue of prejudice. *Rivera v. Artus*, No. 04-CV-5050, 2007 U.S. Dist. LEXIS 79345, *20 (E.D.N.Y. Oct. 25, 2007); *see also Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("[W]e need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [the petitioner] showed prejudice."). If the petitioner does establish cause, the petitioner must then demonstrate "prejudice" by showing that "'there is a reasonable probability' that the result of the trial would have been different" had the alleged constitutional violation not occurred. *Strickler v. Greene*, 527 US. 263, 289 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The "fundamental miscarriage of justice" exception to a procedural bar provides relief for those "rare" and "extraordinary" cases in which a habeas petitioner is able to establish his actual innocence and show that the claimed error led to his conviction. *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (citing *Murray*, 477 U.S. at 496). "Explicitly tying the miscarriage of justice exception to innocence thus accommodates both the systemic interests in finality, comity, and conservation of judicial resources, and the overriding individual interest in doing justice in the 'extraordinary case.'" *Id.*

### III. DISCUSSION[10]

**A. PETITIONER'S FOURTH AMENDMENT CLAIMS ARE DENIED BECAUSE THEY ARE NOT COGNIZABLE UNDER *STONE V. POWELL***

Petitioner asserts that his Fourth Amendment rights were violated when the police entered his home without a warrant, leading to his arrest. Subsequent statements to the police

---

[10] Petitioner's *pro se* status obligates this Court to construe his pleadings liberally. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *see also Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) (per curiam) (holding that district courts must review *pro se* petitions "with a lenient eye, allowing borderline cases to proceed" (citation omitted)).

and witness identifications, he alleges, were therefore fruits of his unlawful arrest and should have been excluded. (Habeas Pet. at 3-4.) Petitioner argues that the suppression court violated his Fourth Amendment rights by admitting evidence that derived from his warrantless arrest in violation of *Payton v. New York*, 445 U.S. 573 (1980), which requires government agents to obtain a warrant prior to arresting an individual in his home. *See id.* at 576; (Habeas Pet. at 3-4.).

Petitioner's Fourth Amendment claims regarding the suppression court's denial of his motion to suppress his post-arrest statements to the police and the results of line-up identifications must be assessed by reference to the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976), which precludes habeas review of Fourth Amendment claims previously litigated in state court:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 494.[11]

Moreover, the Second Circuit has noted that, under *Stone v. Powell*, habeas review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations" or where a corrective procedure is available "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (en banc) (citations and internal quotation marks omitted), *cert. denied*, 434 U.S.1030 (1978).

---

[11]     Petitioner's arguments regarding the need to enforce the exclusionary rule on the basis of sound policy and constitutional law have been explicitly rejected by the Supreme Court in the habeas context: "In [the habeas] context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 494-95.

Here, Petitioner litigated his Fourth Amendment claims both at the suppression hearing and on direct appeal to Second Department. By raising his Fourth Amendment claims in these state fora, petitioner demonstrated that state process was available, and indeed, that he availed himself of that process. *See Singh v. Miller*, 104 F. App'x 770, 772 (2d Cir. 2004). That the state court denied petitioner's Fourth Amendment claim is itself "a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002). "Because the bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim, we conclude that the denial of a habeas petition pursuant to *Stone v. Powell* has the same effect as the denial of a petition presenting procedurally defaulted claims when there is no showing of cause and prejudice." *Id.* Federal courts have consistently approved New York state procedures for litigating Fourth Amendment claims, holding that such procedures provide full and fair opportunity to litigate such claims. *See Capellan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992) (noting that New York's procedures have been upheld as "facially adequate"); *Ortiz v. Artuz*, No. 09 Civ. 5553, 2010 WL 3290962, at *8 (S.D.N.Y. Aug. 09, 2010) ("Federal courts have repeatedly held that New York's procedure for litigating Fourth Amendment claims is constitutionally sound") (citation omitted); *Delston v. New York*, No. 07-CV-4373, 2010 WL 3004591, at *8 (E.D.N.Y. July 29, 2010); *Montero v. Sabourin*, No. 02 Civ. 8666, 2003 WL 21012072, at *5 (S.D.N.Y. May 5, 2003) (holding that habeas review of Fourth Amendment claims "that were, or could have been, previously litigated in state court are barred by *Stone v. Powell*. . . . It has long been acknowledged that New York provides adequate procedures . . . for litigating Fourth Amendment claims."); *Gumbs v. Kelly*, No. 97 Civ. 8755, 2000 WL 1172350, at *10 (S.D.N.Y. Aug. 18, 2000).

Here, since it is clear that corrective process was available, federal habeas review of Petitioner's Fourth Amendment claim will lie only if he demonstrates an "unconscionable breakdown" in the state's procedure for litigating those issues. "An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim." *Smith v. Senowski*, No. 97-CV-1280, 1999 WL 138903, at *6 (E.D.N.Y. Mar. 10, 1999); *see also Grace v. Artuz*, 228 F. Supp. 2d 162, 171 (E.D.N.Y. 2003). The focus of the inquiry must be upon "'the existence and application of the corrective procedures themselves,' rather than the 'outcome resulting from the application of adequate state court corrective procedures.'" *Singh*, 104 F. App'x at 772 (quoting *Capellan*, 975 F.2d at 71)). Indeed, the federal habeas court's role is not to inquire into the merits of the state court decision; rather, a federal court "need only find that the State's procedure for resolving Fourth Amendment claims is 'facially adequate' and that no 'unconscionable breakdown' of the process occurred in the petitioner's case." *Munford v. Graham*, No. 09 Civ. 7899, 2010 WL 644435, at *15 n.24 (S.D.N.Y. Feb. 24, 2010) (citing *Capellan*, 975 F.2d at 69-71) (collecting cases); *see also Singh*, 104 F. App'x at 772 (citation omitted).

Though there is no precise definition as to when an "unconscionable breakdown" has occurred, the Second Circuit has cited to *Frank v. Magnum*, 237 U.S. 309 (1915), and to Paul M. Bator's article, *Finality in Criminal Law & Federal Habeas Corpus for State Prisoners*, 76 Harv. L. Rev. 441 (1963) for guidance. *See Capellan*, 975 F.2d at 70; *Gates*, 588 F.2d at 840; *Munford*, 2010 WL 644435, at *15. Examples cited include the domination of a trial by an angry mob, *see Frank*, 237 U.S. at 312, "bribing a trial judge, the government's knowing use of perjured testimony and the use of torture to extract a guilty plea." *See Munford*, 2010 WL 644435, at *15 (citing Bator, *Finality in Criminal Law*, *supra*, at 455-57).

The alleged breakdown in process must thus call "into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988). Mere dissatisfaction with the outcome of a trial court's determination is insufficient to prove an "unconscionable breakdown" has occurred; a ruling is not unconscionable "simply because the federal court may have reached a different result." *Kirk v. Burge*, 646 F. Supp. 2d 534, 545 (S.D.N.Y. 2009) (quoting *Cappellan*, 975 F.2d at 71).

Petitioner's complaints do not rise to the level of the "unconscionable breakdown" envisioned by *Gates* and its progeny. He claims that the state court was "one sided" and "refused to evaluate" his Fourth Amendment claim "on its full facts and merits." (Habeas Pet. at 4.) He alleges, moreover, that the state suppression court did not address all relevant constitutional law, and since the appellate court relied on the suppression court's opinion, it too was in error. (*Id.*) An unconscionable breakdown is not based on potentially erroneous analysis; rather, it occurs when a state process is rendered unjust due to the absence of "rational conditions for inquiry into federal-law . . . questions." Bator, *Finality in Criminal Law*, *supra*, at 457; *see Castillo v. Miller*, No. 04 Civ. 6157 (GEL), 2005 U.S. Dist. LEXIS 8014, at *15-16 (S.D.N.Y. Apr. 28, 2005). The Petitioner's argument is premised more on a disagreement with the state court's findings than on any fundamental objection to the process itself. Even given an erroneous state court decision – by no means evident here – "a petitioner cannot gain federal review of a Fourth Amendment claim simply because the federal court may have reached a different result." *Capellan*, 975 F.2d at 71.

Thus, this Court is precluded from reviewing Petitioner's Fourth Amendment claim. Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state

courts. Those courts afforded adequate procedures to satisfy due process. Accordingly, Petitioner's claim that he was arrested without a warrant and that subsequently discovered evidence should be excluded is not cognizable on habeas review and is therefore DENIED.

## B.  PETITIONER'S CLAIMS REGARDING JURY INSTRUCTIONS ARE DENIED

Petitioner claims both that the trial court erred in failing to properly instruct the jurors to give them instructions before releasing them for the weekend, and that the trial court erred in administering these improper instructions in his absence. (Am. Habeas Pet. at 6; *see also* Def. *Pro Se* Supplemental Br. at 31.) Petitioner's claims that the trial court erred in failing to properly instruct the jury, and for having instructed the jury in his absence, were argued on direct appeal, and rejected as meritless. *People v. White*, 752 N.Y.S.2d 905 (App. Div. 2003). Thus, Petitioner exhausted these claims and they may be considered by this Court.

Since the Appellate Division ruled on the merits of the jury instruction claims, they must be assessed according to the deferential standard of review established by 28 U.S.C. § 2254(d)(1). As noted *supra*, this section only applies to questions of federal law. *Wilson*, 2010 WL 4394137, at *2.

Section 2254(d)(1) requires that a federal habeas court review only issues of law that are "contrary to" or "an unreasonable application" of federal law. *See* 28 U.S.C. § 2254(d)(1)-(2); *Williams*, 529 U.S. at 405-06, 413. The question of whether charges were delivered by the judge before each recess is a state law issue. N.Y.C.P.L. § 470.20 requires only the delivery of instructions to the jury at the trial's commencement.

Petitioner has not shown that the trial court's failure was contrary to or an unreasonable application of federal law as would warrant habeas relief. Petitioner has failed to identify clearly

25

established Supreme Court precedent that would vindicate his claim, or show how that precedent was unreasonably applied to his claim of error.[12] Thus, this issue does not present a question of federal law and is therefore not subject to federal review in the instant habeas petition. *Wilson*, 2010 WL 4394137, at *2.

Petitioner also argues that jury instructions, if any, were given in petitioner's absence and thus violated his constitutional right to be present at all stages of trial. This claim is governed by the AEDPA's deferential standard of review. Though it is axiomatic that a defendant in a criminal proceeding enjoys the right to be present at all stages of trial pursuant to the Sixth Amendment's confrontation clause, and the Due Process Clause of the Fifth and Fourteenth Amendments, the defendant must actually prove he was not present at trial. *United States v. Gagnon*, 470 U.S. 522, 526-27 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964)) ("[A] defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'"); *United States v. Fontanez*, 878 F.2d 33, 35 (2d Cir. 1989) (Sixth Amendment). Moreover, to establish a due process violation, a defendant must show both that his presence would have enhanced the

---

[12]    In any event, even if the violation were federal, generally, habeas corpus will not lie because of an irregularity or insufficiency of jury instructions absent a deprivation of constitutional rights. *Lau v. Goord*, 540 F. Supp. 2d 399, 407 (E.D.N.Y. 2008); *see also Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 2001); *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). Constitutional error is harmless absent a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993); *Lau*, 540 F. Supp 2d at 407. Where an error in a jury instruction is alleged, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Davis*, 270 F.3d at 123 (quoting *Cupp v. Naughten*, 414 U.S. 141 (1973)). Moreover, in general, omissions or incomplete instructions are less likely to be prejudicial than actual misstatements of the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

fairness of the proceeding in question, and that the procedure in question was critical to outcome of the criminal proceeding. *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *see also Kotler v. Woods*, 620 F. Supp. 2d 366, 382 (E.D.N.Y. 2009).

Here, it is altogether unclear whether Petitioner was, in fact, absent from the courtroom when the state trial judge charged the jury. Though federal constitutional principles govern a defendant's right to be present at trial, New York State law determines an appellant's disputed presence or absence from a state court proceeding by attaching a "presumption of regularity" to all criminal proceedings, which may only be overcome by "substantial evidence to the contrary." *People v. Harris*, 61 N.Y.2d 9, 16 (1983). The appellant bears the burden "to present a clear factual record for review." *People v. Hentley*, 547 N.Y.S.2d 876, 878 (App. Div. 1989).

Petitioner has not overcome the presumption of attendance at the trial proceedings because he has not by submitted "substantial evidence" to the contrary. In fact, the record does not indicate his absence at all. There is no indication in the record of defendant's absence from the courtroom during the delivery (or lack thereof) of pre-recess instructions, and Petitioner has not overcome New York's presumption of regularity by substantial evidence.

Moreover, Petitioner has failed to allege any prejudice deriving from the delivery of pre-recess instructions in any respect. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 363 (S.D.N.Y. 2006) (holding that petitioner's due process right was not violated because he did not "demonstrate how his presence . . . would have benefitted his defense, or that his absence in the least bit compromised the fairness of his trial"). These pre-recess instructions, admonishing the jury not to discuss the case over the weekend, were not critical to the outcome of the criminal proceeding. The state's rejection of the claim was a reasonable application of Supreme Court precedent. Even if it were not so, in the worst case, the state court committed a harmless error

resulting in no prejudice to the Petitioner, his presence would not have made any difference whatsoever. *See Yarborough v. Keane*, 101 F.3d 894, 898 (2d Cir. 1996) (noting that, generally, violations of the right to be present for critical stages of trial are subject to harmless error analysis).

Thus both of Petitioner's claims regarding jury instructions are DENIED.

## C. PETITIONER'S *BRADY* CLAIM IS DENIED AS UNEXHAUSTED, BUT DEEMED EXHAUSTED AND PROCEDURALLY BARRED, AND IN ANY EVENT IS WITHOUT MERIT

Petitioner failed to properly file an application for leave to appeal the denial of his motion to vacate judgment in the Appellate Division. Thus, his *Brady* claim was unexhausted in the state courts. As discussed below, this claim is deemed exhausted and procedurally barred from review. Though Petitioner has alleged at least a colorable argument explaining why he failed to file in a timely manner, Petitioner has failed to show that he was prejudiced by his procedural default. And in any event, the claim is without merit. Petitioner has failed to show prejudice resulting from the State's failure to turn over prosecution witness Miley's prison records.

### 1. Failure to Appeal 440 Motion

#### a. *The Exhaustion Requirement*

Though exhaustion is a threshold requirement for federal habeas review, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9. When a petitioner fails to properly exhaust his claims in state court, and the claims can no longer be raised as a result of his failure to follow state procedure, no remedy is "available in the courts of

the State" within the proper meaning of 28 U.S.C. § 2254(b). *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). Therefore, a procedurally barred claim will be unexhausted but "deemed exhausted" by the federal courts. *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004); *McKethan v. Mantello*, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims deemed exhausted where they were "procedurally barred for not having been raised in a timely fashion"), *cert. denied*, 129 S.Ct. 233 (2008).

If the default occurred pursuant to an independent and adequate state procedural ground, then federal habeas review is barred unless petition can demonstrate "'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice,'" that is, showing "actual innocence." *Harris*, 489 U.S. at 262 (citations omitted); *see also Coleman*, 501 U.S. 722, 749-50 (1991); *Murray*, 477 U.S. at 496; *Wainwright v. Sykes*, 432 U.S. 72, 90 (1977).

b. *Petitioner's Brady Claim Is Unexhausted, But Deemed Exhausted And Procedurally Barred From Federal Habeas Review*

Petitioner's claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose Miley's prison records was not properly appealed after the state court denied his motion to vacate. Petitioner is now barred from raising his *Brady* claim before the state court because he did not properly raise the claim on appeal from the motion to vacate judgment, having failed to comply with the formal requirements of 22 N.Y.C.R. § 670.12(b). The procedural default doctrine applies regardless of whether the default occurred at trial, on appeal, or on state collateral review. *See Edwards v. Carpenter*, 529 U.S. 446, 447 (2000).

In the case of a motion to vacate a judgment, New York law requires a prisoner to file a motion for permission to appeal to the Appellate Division within thirty days of service of the order of the trial court's denial of the motion. *See Rittenhouse v. Battles*, 263 F.3d 689, 687 (2d Cir. 2001) (citing 22 N.Y.C.R. § 670.12(b). According to New York statute, application for leave to appeal from a denial of a motion to vacate judgment must contain, *inter alia*, a statement of the issues to be reviewed, a copy of the order from which the applicant seeks to appeal, and a copy of the original motion presented to the 440 court. 22 N.Y.C.R. § 670.12(b).

The Kings County District Attorney's Office served Petitioner with the order and notice of entry on December 29, 2004, making his application due to be filed by January 28, 2004. (*See* Aff. in Opp'n to Am. Pet. for a Writ of Habeas Corpus at 5-6.) It is undisputed that Petitioner did not comply with 22 N.Y.C.R. § 670.12(b), and that, having not complied, he subsequently was precluded from submitting his application for leave to appeal due to the time restrictions described therein.

Petitioner failed to append a copy of his original motion to his application. The court subsequently rejected Petitioner's application for failure to append a copy of the original motion, noting that he could resubmit his application.[13] (*See* Attachs. to Def.'s Letter to Appellate Division, January 30, 2004.) Petitioner then wrote to the state court asking for a copy of the motion, but received no response. (*See* to Def.'s Letter to Appellate Division, January 30, 2004.) He explained that he was unaware of the requirements stipulated in 22 N.Y.C.R. § 670.12(b), included the receipt from his letter to the court requesting a copy of the motion, and noted that

---

[13]        Federal courts generally will not consider whether the state court properly applied its default rule to the petitioner's facts. *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999); *Wood v. Hall*, 130 F.3d 373, 378–79 (9th Cir. 1997); *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997); *Barksdale v. Lane*, 957 F.2d 379, 383 (7th Cir. 1992) ("A federal court sitting in habeas corpus is required to respect a state court's finding of waiver or procedural default under state law. Federal courts do not sit to correct errors made by state courts in the interpretation and application of state law.").

his original motion had been lost in a prison transfer, or, alternatively, had been stolen by prison officials. (*See id.*) His subsequent application, was, however, rejected as untimely. (*See* Am. Habeas Pet. at 3.)

A federal court in reviewing a habeas petition must ask "not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). A motion for post-conviction relief is properly filed when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2001). Thus, Petitioner has not "fairly presented to the state courts his constitutional objection . . . the state courts have not had an opportunity to address the federal claim raised on habeas review and this normally would preclude our review of the claim." *Washington v. James*, 996 F.2d 1442, 1446 (2d Cir. 1993).

Moreover, Petitioner had further recourse: he could have sought permission from the Court of Appeals to file his application for leave to appeal up to one year after the expiration of the thirty-day period. *See* N.Y.C.P.L. § 460.30. Permission for late filing may be granted only under certain narrow circumstances: where the delay was the result of "(a) improper conduct of a public servant or improper conduct, death or disability of the defendant's attorney, or (b) inability of the defendant and his attorney to have communicated, in person or by mail, concerning whether an appeal should be taken." [14] *Davis v. Woods*, No. 05-CV-03414, 2010 WL

---

[14]     The one-year extension for seeking permission to file late leave of appeal is inflexible. *See, e.g., Alejandro v. Berbary*, No. 08-CV-1809, 2010 WL 2075941, at *5 n.5 (E.D.N.Y. May 21, 2010); *Shomo v. Maher*, No. 04-CV-4149, 2005 WL 743156, at *5 (S.D.N.Y. Mar. 31, 2005) ("We remain convinced that strict construction is appropriate since the time limits within which appeals must be taken are jurisdictional in nature and courts lack inherent power to modify or extend them.") (quoting *People v. Thomas*, N.E.2d 1094 (N.Y. 1979)). Only two exceptions have been noted by the New York state courts: first, when action or unjustifiable inaction by a prosecutor thwarts the defendant's diligent and good faith efforts to exercise his appellate rights within a one-year time frame; second, where an attorney has failed to comply with a timely request for filing and the defendant alleges

3747669, at *15 (E.D.N.Y. Sept. 17, 2010). In this case, Petitioner's § 440.10 motion was denied on December 26, 2003, well in excess of the one-year extension; it would thus be futile for him to seek special permission for leave to appeal from the denial of his motion.

Accordingly, Petitioner's claim is deemed exhausted but procedurally barred, as he no longer has a state court forum in which to raise his claim. *See Edmee v. Coxsackie Corr. Facility*, Nos. 09-Civ-3940, 09-Civ-3939, 2009 WL 3318790, at *2 (E.D.N.Y. Oct. 14, 2009) ("The failure to timely appeal the denial of petitioner's § 440.10 motion means that the claim is not only unexhausted, but procedurally barred under state law because it is too late to take that appeal and a state court would dismiss it on that ground."); *DeVito v. Racette*, No. CV-91-2331, 1992 WL 198150, at *3 (E.D.N.Y. Aug. 3, 1992) ("Petitioner's failure to abide by these state time limits suggests that he has inadvertently exhausted his claim: if the state courts will not hear his claim because of their time limits, then the state affords him no further opportunity for relief. This reasoning would not help petitioner, however, because, to the extent that the Court considered his application to be exhausted, the manner in which it became exhausted would require the Court to conclude that it is also procedurally barred."); *see also Grey*, 933 F.2d at 120. Thus, this Court is in fact precluded from hearing Petitioner's claims on the basis of procedural default, rather than exhaustion.

The procedural bar limiting the time during which a prisoner can appeal the denial of his motion to vacate is an adequate and independent state ground. *See Thomas v. Greiner*, 111 F. Supp. 2d 271, 277 (S.D.N.Y. 2000) (noting that "if the lapse of a clear time limit such as the one in CPL § 460.10(4) does not provide grounds for a federal court to find exhaustion and a resulting procedural bar, it is hard to imagine a state rule that ever could"); *see also Alejandro v.*

---

that the omission could not reasonably been discovered within the one-year period. *People v. Syville*, Nos. 153-154, 2010 WL 4005564 (N.Y. Ct. App. Oct. 14, 2010).

*Berbary*, No. 08-CV-1809, 2010 WL 2075941, at *5 n.5 (E.D.N.Y. May 21, 2010); *Shomo v.*
*Maher*, No. 04-CV-4149, 2005 WL 743156, at *5 (S.D.N.Y. Mar. 31, 2005) ("We remain
convinced that strict construction is appropriate since the time limits within which appeals must
be taken are jurisdictional in nature and courts lack inherent power to modify or extend them.")
(quoting *People v. Thomas*, 389 N.E.2d 1094 (N.Y. 1979)); *see also DeVito*, 1992 WL 198150,
at *3. *Cf. Otero v. Eisenschmidt*, No. 01 Civ. 2562, 2006 WL 1321469, at *1 (S.D.N.Y. May 16,
2006) (noting that it is "well established" that the thirty-day time limit of Federal Rule of
Appellate Procedure 4(a) for filing a notice of appeal is "mandatory and jurisdictional" (quoting
*In re Siemon*, 421 F.3d 167, 169 (2d Cir. 2005)); *accord, e.g., Panizza v. Mattel, Inc.*, No. 02-
CV-7722, 2004 WL 324893, at *1 (S.D.N.Y. Feb. 19, 2004). Thus, the Court must consider
whether there existed "cause and prejudice" or "a fundamental miscarriage of justice" that would
excuse the procedural default. *Harris*, 489 U.S. at 262 (citations and internal quotation marks
omitted). Since Petitioner has not made any allegation of innocence, this Court must only decide
whether Petitioner's explanations are adequate to excuse his procedural default on the basis of
cause and prejudice.

Petitioner alleges a bevy of excuses for his failure to comply with the procedural
requirements of 22 N.Y.C.R. § 670.12(b). However, adequate cause requires that "some
objective factor external to the defense" prevented the petitioner's proper filing. *Coleman*, 501
U.S. at 753 (1991). Petitioner's allegation of ignorance of the law and his protest that his papers
were simply lost in prison are insufficient to allege adequate cause to excuse the procedural
default; rather, these are simply excuses that are "fairly attributable to [Petitioner's] own
conduct." *Murray*, 477 U.S. at 488; *see, e.g., Kibler v. Walters*, 220 F.3d 1151, 1153–54 (9th
Cir. 2000); *McCoy v. Newsome*, 953 F.2d 1252, 1257–58 (11th Cir. 1992) ("We find that the

claims [on which Petitioner] defaulted did not raise issues which were intrinsically beyond a pro se petitioner's ability to present, especially in light of the fact that he did present them while still proceeding pro se. He simply asserted them too late.").

Only Petitioner's allegation that he failed to comply with the technical requirements of 22 N.Y.C.R. § 670.12(b) because prison officials stole his papers could constitute a colorable allegation of adequate cause. *Coleman*, 501 U.S. at 753 (possible to establish cause by showing that "some interference by officials . . . made compliance impracticable."). For example, some courts have found that a state's failure to provide a petitioner with transcripts needed to present the federal claim at issue to constitute sufficient cause for procedural default. *See, e.g., Meggett v. Miller*, No. 93 Civ. 7402, 1994 WL 808048, at *11 (S.D.N.Y. Jun. 23, 1994) (quoting *Britt v. North Carolina*, 404 U.S. 226, 228 (1971)). However, in these cases, the petitioner must demonstrate that the absence of the transcripts precluded his properly pursuing the claim in state court and there were no reasonably available alternative sources of information. *Id.* Petitioner cannot meet this burden for several reasons.

First, detrimental to Petitioner's argument for cause is the conclusory nature of his allegation that his papers may have been stolen in a prison transfer. Petitioner offers no proof that this was the case; rather, he concedes that he himself might have been at fault by admitting that there is a chance he might have lost his papers in the prison transfer. Moreover, as discussed above, Petitioner had a separate avenue to redress his claim, by applying for permission from the Court of Appeals to file his application for leave to appeal up to one year after the expiration of the thirty-day period. *See* N.Y.C.P.L. § 460.30.

More importantly, Petitioner cannot prove that he suffered actual prejudice from his procedural default. *Murray*, 477 U.S. at 494. To demonstrate prejudice, Petitioner would have

to show that the outcome in the Appellate Division would have been different had he filed properly – that the default worked to his actual and substantial disadvantage. *See id.* Most facts weigh against the finding of prejudice here. For example, as the State points out in its brief, Petitioner also omitted the order from which he desired to appeal, which means that the application was in any event deficient and could have been rejected on that basis. (*See* Mem. of Law in Opp'n to Am. Pet. for a Writ of Habeas Corpus at 4.)

Moreover, the 440 court did not incorrectly apply the federal law governing the disclosure of exculpatory evidence, as shown below. The Supreme Court has held that "cause and prejudice" in the *Brady* context "parallel two of the three components of the alleged *Brady* violation itself." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "Materiality" in the *Brady* context is thus coincident with the concept "prejudice." *See Banks v. Dretke*, 540 U.S. 668, 691 (2004). Similarly, "suppression" in the Brady context is coincident with the concept of "cause"; that is, "the reason for [Petitioner's] failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence." *Id.* Thus, as shown below, since the *Brady* violation is not "material" there can be no prejudice, as there is no chance that the Appellate Division would have come to a different result on the basis of this particular claim. *See id.*

## 2. **In Any Event, Petitioners *Brady* Claim Is Meritless**

Petitioner claims that the State withheld prosecution witness Jason Miley's prison records in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner alleges that the disclosure of these prison records would indicate that Miley was, at the time of testimony, a member of a gang; on the witness stand, he conceded having been a member previously but denied contemporaneous membership. (Am. Habeas Pet. at 5.) This fact, according to Petitioner, would

seriously undermine Miley's credibility as a witness for the prosecution. (*Id.* at 4-5.) Moreover, because Miley reversed his testimony on the witness stand, Petitioner opined that prison records might have contained evidence regarding mental illness. (*Id.* at 4.)

As discussed above, the Court finds that this claim is unexhausted, but deemed exhausted and procedurally barred, and as discussed below, it is also meritless.

### a. *The* Brady *Standard*

Under *Brady*, federal prosecutors at the state and federal levels must turn over exculpatory and impeachment evidence when the evidence is material either to guilt or to punishment, whether or not requested by the defense. *See Brady v. Maryland*, 373 U.S. at 87; *see also Strickler*, 527 U.S. at 280. However, this rule does not require a prosecutor to "deliver his entire file to defense counsel." *Bagley*, 473 U.S. at 675. Rather, the state must disclose evidence material to the defendant's guilt or sentence. *Id.*

"There are three components of a true *Brady* violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Strickler*, 527 U.S. at 281-82. As noted above, the first prong is coincident with the concept of prejudice, while the second prong is coincident with the concept of cause. *See Banks*, 540 U.S. at 691; *Strickler*, 527 U.S. at 281-82. Petitioner has not made any claim as to why he failed to raise the *Brady* claim prior to the 440 hearing. More importantly, Petitioner has wholly failed to prove the materiality of the records at issue, and thus has failed to prove prejudice. It is to this analysis that the Court now turns.

The Supreme Court has noted that evidence is material "if there is a *reasonable probability* that, had the evidence been disclosed to the defense, *the result of the proceeding would have been different." Bagley*, 473 U.S. at 682 (emphasis added); *see also Strickler*, 527 U.S. at 281-82. The crux of the inquiry is whether, without the exculpatory evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678). Evidence is material for *Brady* purposes only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. "It is well established that the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief." *Mallet v. Miller*, 432 F. Supp. 2d 366, 378 (S.D.N.Y. 2006) (citing *Strickler*, 527 U.S. at 286 ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review.")); *United States v. Avellino*, 136 F.3d 249, 261 (2d Cir. 1998) ("In the absence of a proffer by [defendant] of any nonspeculative basis for inferring that . . . the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary."); *United States v. Navarro*, 737 F.2d 625, 631 (7th Cir. 1984) ("A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court.")); *see also Thomas v. West*, No. 03 Civ. 1443, 2007 U.S. Dist. LEXIS 11765, at *42 (S.D.N.Y. Feb. 22, 2007) (denying habeas relief based on *Brady* because the petitioner "fail[ed] to explain how any of these items would have been exculpatory").

Once constitutional error has been established there is no need for harmless error review, since a finding a "reasonable probability" that disclosure would entail a different result implies that the exclusion had a "substantial and injurious effect or influence in determining the jury's verdict." *Kyles*, 514 U.S. at 435. Materiality does not depend solely on the sufficiency of the evidence; rather, an "omission must be evaluated in the context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112 (1976).

b. *Application*

The state court rejected Petitioner's *Brady* claim, finding that the prosecution had complied with its discovery obligations under state law. (Judge Feldman 440 Decision.) Moreover, the state court invoked the federal standard, concluding in essence that the evidence was not material. (*See id.*) Since the Petitioner failed to make a specific demand for disclosure, a Constitutional violation would follow only if there existed "'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *See id.* (quoting *Bagley*, 473 U.S. at 682). The state court concluded that "the jury's awareness of the witness's extensive criminal history coupled with additional strong evidence of defendant's guilt" meant that there was "no reasonable probability that such speculative evidence would in any way have altered the verdict in the case." *Id.*

Petitioner alleges that prison records might have undermined Miley's credibility as a witness for the prosecution, by showing that he lied about his membership in the Bloods gang, and by showing, potentially, that he was undergoing treatment for mental illness. (Am. Habeas Pet. at 4-5.) However, the state court did not err. Even without the additional evidence sought by Petitioner, Miley was a witness of extremely questionable credibility, a fact exploited by the

38

defense counsel on cross-examination as well as summation. (Trial Tr. 370, 380-96, 398-405, 458-61.)

Absent the records sought by Petitioner, the jury was nonetheless made aware of Petitioner's extensive and violent criminal history, and that he was, at a time relatively recent to the time of testimony, a member of the notorious Bloods gang. (*Id.* at 158, 202.) Additionally, the jury witnessed first-hand Miley's testimony, which included numerous contradictions and an actual admission to defense counsel that he had lied on the stand and to the police. *United States v. Jackson*, 345 F.3d 59, 74 (2d Cir. 2003) ("[A] new trial is generally not required when the testimony of the witness is 'corroborated by other testimony' or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable."), *cert. denied*, 541 U.S. 956 (2004). Defense counsel took full advantage of Miley's questionable credibility, both on cross-examination, and in summation.

Moreover, three additional eyewitnesses corroborated Miley's testimony, testifying much to the same end. *Id.* "Materiality is assessed in light of the evidence adduced against the defendant at trial; when a conviction is supported by overwhelming evidence of guilt, habeas relief is not warranted." *Leka v. Portuondo*, 257 F.3d 89, 104 (2d Cir. 2001); *see also United States v. Gil*, 297 F.3d 93, 103 (2d Cir. 2002) ("Where the evidence against the defendant is ample or overwhelming, the withheld *Brady* material is less likely to be material than if the evidence of guilt is thin."); *United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998) (holding that "the strength of the independent evidence of appellees' guilt increases the degree of significance that would need to be ascribed to the withheld impeachment evidence in order for it

reasonably to undermine confidence in the verdict"). Thus, an additional blow to Miley's already extremely questionable credibility would not have affected the outcome of the case.

This Court agrees that there is no "reasonable probability" that the evidence at issue was "material" or that it "prejudiced" Petitioner, and that the state courts' dismissal of Petitioner's *Brady* claim was not an erroneous or unreasonable application of federal law as pronounced by the Supreme Court. *See Banks*, 540 U.S. at 691 (prejudice exists when the suppressed evidence is material for *Brady* purposes). Therefore, Petitioner's *Brady* habeas claim is DENIED.

**D.    PETITIONER'S CLAIM THAT A PROSECUTION WITNESS GAVE FALSE TESTIMONY IS UNEXHAUSTED, BUT DEEMED EXHAUSTED AND PROCEDURALLY BARRED, AND IN ANY EVENT IS WITHOUT MERIT**

**1.  Petitioner's Newly Discovered Evidence Claim Is Unexhausted And Procedurally Barred**

For the reasons described in Section C, Petitioner's claim that newly discovered evidence gives weight to his claim that a prosecution witness gave false testimony under oath is unexhausted, but deemed exhausted and procedurally barred from habeas review. As above, Petitioner has not alleged adequate cause and prejudice, or shown a fundamental miscarriage of justice, to overcome the procedural bar for the claim. Though the cause analysis is identical to that in Section C, prejudice cannot be adequately alleged because the underlying claim was itself procedurally barred from review, as explained below. Thus it cannot be reviewed by this Court.

**2.  In Any Event, Petitioners Claim That A Prosecution Witness Gave False Testimony Is Procedurally Barred By His Failure to Raise the Issue On Direct Appeal**

Under New York law, when sufficient facts underlying a claim are on the trial record, the petitioner's unjustifiable failure to assert the claim on direct appeal triggers a procedural default barring habeas review. *See Murden v. Artuz*, 497 F.3d 178, 196 (2d Cir. 2007) (citing N.Y.C.P.L. § 440.10(2)(c)); *Sweet v. Bennett*, 353 F.3d 135, 139-40 (2d Cir. 2003) (clarifying that New York's procedural default rule can bar federal review of a § 2254 petition that asserts claims of ineffective assistance of counsel)). In her 440 Decision, Judge Feldman held that Petitioner's claim that the State elicited false testimony from a prosecution witness was an "on-the-record claim" that Petitioner unjustifiably failed to raise on direct appeal. (Judge Feldman 440 Decision (citing 440.10(2)(c))) The federal courts have consistently held that decisions based on N.Y.C.P.L. § 440.10(2)(c) constitute "adequate and independent" state grounds. *See Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003) (§ 440.10(2)(c) constituted adequate and independent state law ground barring federal habeas review); *Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002), *cert. denied*, 538 U.S. 986 (2003); *Hayward v. Brown*, No. 09 Civ. 6495, 2010 WL 2629037, at *19 (S.D.N.Y. July 1, 2010) (collecting cases); *Nash v. Ercole*, No. 08 Civ. 5293, 2009 WL 2778247, at *6, 13 (S.D.N.Y. Sept. 1, 2009).

Petitioner has not alleged cause for his procedural default, or resulting prejudice, and has not alleged that he is actually innocent. His claim is therefore DENIED on the basis of this adequate and independent state ground.

**E. PETITIONER'S CLAIM THAT A PROSECUTION WITNESS GAVE FALSE TESTIMONY IS UNEXHAUSTED, BUT DEEMED EXHAUSTED AND PROCEDURALLY BARRED, AND IN ANY EVENT IS WITHOUT MERIT**

**1. Petitioner's Claim That Newly Discovered Evidence Corroborates His Claim That A Prosecution Witness Committed Perjury Is Unexhausted And Procedurally Barred**

Petitioner claims that a letter sent to him by Jamar Curtis's sister subsequent to his conviction, stating that Curtis committed perjury when he testified at trial, constitutes newly discovered evidence buttressing his claim that Curtis lied on the stand, and that this evidence was wrongly rejected by the 440 court. For the same reasons described above in Section C, Petitioner's claim that newly discovered evidence gives weight to his claim that a prosecution witness testified falsely under oath is unexhausted, but deemed exhausted and procedurally barred from habeas review. As above, Petitioner has not alleged adequate cause and prejudice, or shown a fundamental miscarriage of justice, to overcome the procedural bar for the claim. As shown below, prejudice cannot be shown because the alleged newly discovered evidence is inadmissible in any event. Thus it cannot be reviewed by this Court. Moreover, this claim is meritless.

**2. Procedural or Merits Based Review**

Under N.Y.C.P.L. § 440.30(4)(d), the court may deny a motion to vacate without conducting a hearing if:

> An allegation of fact, essential to support the motion (i) is contradicted by a court record or other official document, or is *made solely by the defendant and is unsupported by any other affidavit or evidence*, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true.

NYC.P.L. § 440.30(4)(d) (emphasis added). On this basis, Judge Feldman dismissed Petitioner's claim that newly discovered evidence was exculpatory and should be admitted as evidence that a prosecution witness lied on the stand. (Judge Feldman 440 Decision at 2–3.)

There is currently a split of authority within the Second Circuit as to whether the denial of a motion pursuant to N.Y.C.P.L. § 440.30(4)(b) constitutes an "independent and adequate" state procedural bar. Some district courts have treated the denial as a procedural bar to habeas review. *Williams v. McGinnis*, No. 04-CV-1005, 2006 WL 1317041, at *10 (E.D.N.Y. May 15, 2006); *Marsh v. Ricks*, No. 02 Civ. 3449, 2003 WL 145564, at *6-7 & n.7 (S.D.N.Y. Jan. 17, 2003) (citing *Roberts v. Scully*, 875 F.Supp. 182, 193 n.7 (S.D.N.Y. 1995) (denial due to inadequacy of petitioner's papers would be an independent and adequate state law ground), *aff'd*, 71 F.3d 406 (2d Cir. 1995). Other district courts have found that denial constitutes a decision on the merits. *Edwards v. Mazzuca*, No. 00 Civ. 2290, 2007 WL 2994449, at *15 (S.D.N.Y. Oct. 15, 2007) (agreeing that find a denial of a motion under N.Y.C.P.L. § 440.30(4) constitutes a decision on the merits); *Gonzalez-Pena v. Herbert*, 369 F.Supp.2d 376, 388-89 (W.D.N.Y. 2005) (noting split of authority, but finding that a denial under N.Y.C.P.L. § 440.30(4)(b) is a decision on the merits).[15] As discussed below, this Court need not take a position on this issue because Petitioner's claim fails on both procedural and substantive grounds.

If § 440.30(4)(d) constitutes an adequate and independent state ground, Petitioner is procedurally barred from asserting the claim on habeas because he has neither shown sufficient cause for his procedural default, or resulting prejudice (as discussed below), nor has he alleged

---

[15] The Second Circuit's finding that a state court's denial of a motion pursuant to N.Y.C.P.L. § 440.30(4)(c) constitutes a "judgment on the merits" may shed some light on the split. *Garcia v. Portundo*, 104 F. App'x 776, 779 (2d Cir. 2004) ("Even aside from the fact that [C.P.L. § 440.30(4)] opens with an explicit reference to 'considering the merits of the motion,' subsection (c) implicitly requires a balancing of the evidence presented by the parties . . . ."). For example, at least one court has applied that reasoning to find that a dismissal pursuant to N.Y.C.P.L. § 440.30(4)(b) constitutes a decision on the merits. *See Lopez v. Ercole*, No. 09 Civ. 1398, 2010 WL 1628994, at *18-19 (S.D.N.Y. Apr. 21, 2010). That court agreed with Judge Gleeson's reasoning that, because the statute refers the procedures for deciding N.Y.C.P.L. § 440 motions, stating specifically that *"[u]pon considering the merits of the motion,* the court may deny it without conducting a hearing" given specific certain conditions, that constitutes a decision on the merits rather than a procedural bar. *See id.*; *Lou v. Matello*, No. 98-CV-5542, 2001 WL 1152817, at *9 n.9 (E.D.N.Y. Sept. 25, 2001).

actual innocence. On the other hand, if Judge Feldman's § 440.30(4)(d) decision constitutes a judgment on the merits, it is neither contrary to, nor an unreasonable application of, federal law.

## 3. Petitioners Claim That Newly Discovered Evidence Shows That A Prosecution Witness Gave False Testimony Is Without Merit

Petitioner's claim of "newly discovered evidence" fails on the merits. Petitioner claims that the letter from Curtis's sister constitutes "newly discovered evidence" and that it proves that Curtis lied on the witness stand, causing the State to rely on perjured testimony in violation of his due process rights. The letter in question is not "newly discovered evidence" because Curtis's sister was available for questioning at the time of trial and thus, the evidence could have been obtained by Petitioner during his trial. *See e.g.*, *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963) (newly discovered evidence is that "which could not reasonably have been presented to the state trier of facts")); *Hector v. Greiner*, No. 99-CV-7863, 2000 WL 1240010, at *1 (E.D.N.Y. Aug. 29, 2000) ("Newly discovered evidence is, by definition, incapable of discovery through . . . due diligence before or during trial. . . . Evidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as newly discovered." (citations and internal quotation marks omitted)). Though the actual letter was produced after conviction, its substance could have been discovered during trial. Therefore, it is not cognizable on federal habeas review.

Further, the Second Circuit has held that a showing of perjury at trial does not, in itself, establish a violation of due process requiring federal habeas relief. *Ortega v. Duncan*, 333 F.3d 102, 108 (2d Cir. 2003). When false testimony is provided by a government witness without the prosecution's knowledge, then a due process violation only occurs "if the testimony was material

and 'the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.'" *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991) (quoting *Sanders v. Sullivan*, 863 F.2d 218, 226 (1988)).

The Court must assess the likelihood of "whether the jury probably would have altered its verdict if it had had the opportunity to appraise the impact of the newly-discovered evidence not only upon the factual elements of the government's case but also upon the credibility of the government's witness." *United States v. Stofsky*, 527 F.2d 237, 246 (2d Cir. 1975). The Court must consider "whether there was a significant chance that this added item, developed by skilled counsel. . .could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." *United States v. Seijo*, 514 F.2d 1357, 1364 (2d Cir. 1975) (citing *United States v. Sperling*, 506 F.2d 1323, 1333 (2d Cir. 1974)).

Given the testimony of other eyewitnesses, which adds to the total strength of the case against Petitioner, it is not likely the letter would have changed the mind of the jury. That the supposed "newly discovered evidence" is an unsworn statement, rather than a sworn affirmation as required by statute, supports the fact that Petitioner cannot show that had it been presented, it would certainly have created a reasonable doubt as to his guilt. *See, e.g., Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000). Indeed, it is not at all clear that Curtis's testimony was, in fact, false, and the evidence purporting to prove its falseness is not compelling.

The Court finds the evidence is insufficient to support a federal constitutional claim that the Petitioner's due process rights were violated. Accordingly, petitioner's claim on this basis is DISMISSED.

**F.     PETITIONER'S CLAIMS THAT HIS SIXTH AND FIFTH AMENDMENT RIGHTS WERE VIOLATED IS DENIED AS UNEXHAUSTED, BUT DEEMED EXHAUSTED AND PROCEDURALLY BARRED**

Petitioner contends that the state court's failure to fully address all relevant facts in his motion to suppress violated his Sixth Amendment right to a fair trial. (Habeas Pet. at 4.) He also contends that the suppression court's failure to adhere to jurisprudential standards and to apply correct state and federal law violated his Fifth Amendment rights to due process. (*Id.* at 3-4.) Petitioner advances these claims for the first time in his federal habeas corpus petition.[16]

Petitioner's claims could have been, but were not raised either in his direct appeal to the Second Department, or in his 440 motion to vacate the judgment. As explained above,[17] these claims are thus unexhausted, but deemed exhausted. Moreover, it is clear that Petitioner is now procedurally barred from raising his claims in state court: "New York's collateral procedures are unavailable because [Petitioner] could have raised the claim on direct review but did not. . . . Because [Petitioner] failed to raise his claim in state court and may no longer do so, his claim is procedurally defaulted." *See Washington*, 996 F.2d at 1446-47.

Petitioner has not alleged cause and prejudice, nor has he made a showing of actual innocence, either of which could potentially excuse the procedural default. Thus, his unexhausted Fifth and Sixth Amendment claims are barred from habeas review and DENIED.

---

[16] However, Petitioner conflates this violation with the Fourth Amendment violations already discussed, *supra,* Section A.

[17] *See supra*, Section C.

## CONCLUSION

Accordingly, it is hereby ORDERED that Plaintiff's habeas corpus petition (Dkt. No. [1] and [11]) is DENIED in its entirety, and a certificate of appealability should not be issued. The Clerk of Court is directed to dismiss this petition and close the case.

SO ORDERED.

Dated: Brooklyn, New York
      November 30, 2010

s/Roslynn R. Mauskopf
ROSLYNN R. MAUSKOPF
United States District Judge